**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

KIMBERLY AHMANN,

                                                    Civil No. 23-2620 (JRT/SGE)

                              Plaintiff,

v.

                                        **MEMORANDUM OPINION AND ORDER**
                                        **DENYING DEFENDANT'S MOTION FOR**
BLATTNER HOLDING COMPANY, LLC,          **SUMMARY JUDGMENT**

                              Defendant.


   Joni M. Thome and Katherine Rollins, **WANTA THOME PLC**, 100 South Fifth
   Street, Suite 1200, Minneapolis, MN 55402, for Plaintiff.

   Allison Dohnalek, Brian J. Linnerooth, John A. Sullivan, and Megan Kunze,
   **BEST & FLANAGAN LLP**, 60 South Sixth Street, Suite 2700, Minneapolis, MN
   55402, for Defendant.


   Plaintiff Kimberly Ahmann worked for Defendant Blattner Holding Company, LLC

("Blattner") for approximately three years.  In the first two years of her employment,

Ahmann had no issues.  Starting in March 2021, Ahmann began experiencing worsening

health.  Shortly thereafter, Blattner reported a decline in Ahmann's work performance.

Ahmann's health continued to worsen, including a lengthy hospital stay and recovery.

Ahmann eventually returned to work but was terminated roughly six months later.

Throughout this time, Ahmann believed she was on leave under the Family and Medical

Leave Act ("FMLA"), but Blattner claimed to never have received any information about

FMLA leave.  Ahmann initiated this action claiming interference and retaliation under the

FMLA. Blattner now moves for summary judgment. Because there remain genuine disputes as to material facts, the Court will deny Blattner's motion for summary judgment.

## BACKGROUND

### I.    FACTS

Ahmann began working for Blattner as an instructional designer in August 2019. (Compl. ¶ 7, Aug. 24, 2023, Docket No. 1; Decl. John A. Sullivan ("Sullivan Decl.") ¶ 3,  Ex. B at 2, Aug. 8, 2024, Docket No. 23.) Ahmann worked in this capacity at Blattner until she was terminated on June 23, 2022. (Sullivan Decl. ¶ 4, Ex. C at 2.) Blattner cited Ahmann's poor performance in its termination notice, listing both an oral warning received in April 2021 and a written warning received in July 2021. (*Id.*) Before her termination, Ahmann received positive feedback from supervisors, a raise in her first year at Blattner, and bonuses in March 2021 and 2022. (Decl. Joni Thome ("Thome Decl.") ¶ 2, Ex. 22 ("Ahmann Dep.") at 60:21–64:4, Ex. 23 ("Martin Dep.") at 36:10–17, 51:2–52:24, Aug. 29, 2024, Docket No. 32.)

In early 2021, Ahmann started to have health issues. (Compl. ¶¶ 9–10.) Ahmann alleged that she informed her then supervisor, Sean Martin, of these worsening health issues as she needed time off work. (*Id.*; Thome Decl. ¶ 2, Ex. 15 at 3–5, 7, 9–10, 12–14.) Ahmann did not request FMLA leave at this time, and Martin told her just to take the time she needed. (Ahmann Dep. 24:9–16.)

In April 2021, Ahmann received an oral warning after cancelling a meeting with a colleague, describing she had "beach on the brain." (*Id.* at 74:1–11, 78:10–14.) Martin

counseled Ahmann that cancelling the meeting at the last minute was unprofessional, but Ahmann described that the other participant responded with "Oh, no problem." (*Id.* at 78:16; Sullivan Decl. ¶ 6, Ex. E ("Oral Warning") at 2.) The oral warning also referenced previous coaching sessions between Martin and Ahmann. (Oral Warning at 2.) Martin testified that prior coaching sessions are likely documented but provided no specific written documentation. (Martin Dep. at 65:21–66:13.)

In July 2021, Ahmann received a written warning. (Sullivan Decl. ¶ 7, Ex. F ("Written Warning") at 2–4.) The written warning listed several areas of concern in work performance, including lack of focus, reliability and trust, and interpersonal relationships/professionalism/collaboration. (*Id.* at 2–3.) Upon receiving the written warning, Ahmann was given a "Day of Contemplation" to respond to the written feedback. (*Id.* at 4.) The written warning was placed in Ahmann's personnel file and specifically noted she would be ineligible for wage increases. (*Id.*) Sara Peterson and Martin wanted to terminate Ahmann at this time, but human resources recommended a written warning instead. (Martin Dep. at 75:8–16.)

During her day of contemplation, Ahmann responded to the written warning but also saw her primary care physician, Dr. Julie Anderson, about her anxiety. (Ahmann Dep. at 99:19–23, 109:7–18; Sullivan Decl. ¶¶ 9–10, Exs. H at 2–6, I at 2.) Ahmann then emailed Blattner's human resources department asking about FMLA leave but without making a specific request. (Sullivan Decl. ¶ 11, Ex. J. at 2–3.) Blattner provided Ahmann with FMLA

paperwork two days later.  (*Id.* ¶ 12, Ex. K at 2.)  Anderson did not complete FMLA paperwork for Ahmann at that time.  (*Id.* ¶ 14, Ex. M ("Anderson Dep.") at 65:10–66:24.) An internal Blattner document suggests that Ahmann was granted intermittent FMLA leave as of July 28, 2021.  (Thome Decl. ¶ 2, Ex. 14 at 2.)

Over concern for her employment, Ahmann repeatedly sought, and received, reassurance from Martin about her performance and inquired about legal paperwork to account for her absences.  (Ahmann Dep. at 130:6–131:4, 139:9–16.)  Consistent with Blattner's FMLA policy, Martin informed Ahmann that she did not need FMLA paperwork. (*Id.* at 131:2–4; Sullivan Decl. ¶ 13, Ex. L ("FMLA Policy") at 6.)

As her health issues worsened, Ahmann described Blattner questioning her more about her health but without mention of FMLA.  (Ahmann Dep. at 11:6–9, 35:21–22, 73:10–11, 91:7–14.)  At the same time, Martin testified that Ahmann's performance declined, which required Blattner to transfer projects to other employees.  (Martin Dep. at 95:12–16.)

In December 2021, Ahmann was hospitalized and required surgery.  (Sullivan Decl. ¶ 24, Ex. V at 2.)  Martin and Todd Lorentz, a Blattner human resources employee, worked together to secure Ahmann's leave while hospitalized, including providing FMLA paperwork.  (Martin Dep. at 100:20–101:10; Thome Decl. ¶ 2, Ex. 25 ("Lorentz Dep.") at 28:18–23, 33:9–34:22; Sullivan Decl. ¶ 20, Ex. R at 2.)  While in the hospital, Ahmann again expressed concern to Martin about her employment, to which he responded that she

need not worry. (Thome Decl. ¶ 2, Ex. 13.1 at 2, Sullivan Decl. ¶ 17, Ex. O at 2.) Ahmann's medical record included a completed FMLA form from December 13, 2021, stating that she would be in the hospital for some time and then require outpatient follow up appointments. (Sullivan Decl. ¶ 14, Ex. N at 6–9.) This form did not include a need for intermittent leave. (*Id.* at 8.) Lorentz described never receiving the completed paperwork. (Lorentz Dep. at 35:3–4.)

Before returning to work, Ahmann alleged that Lorentz informed her, in the presence of her neurologist, Dr. Gilbert Cadena, that she needed to be 100% before she could return to work; Lorentz denied making that claim and instead insisted that he informed her that she would need a release form signed by a physician because she was out for more than three days. (Ahmann Dep. at 173:17–174:13; Lorentz Dep. at 30:2–21.) Cadena denied overhearing this conversation between Ahmann and Lorentz and stated unequivocally that he would not have altered return-to-work conditions in response to an employer's request. (Sullivan Decl. ¶ 23, Ex. U ("Cadena Dep.") at 48:14–49:3, 58:2–60:8.) Cadena initially issued a return-to-work letter for January 10, 2022, with "abbreviated hours" to allow for recovery. (Ex. V at 2.)

Ahmann returned to work without restrictions on January 17, 2022, but she received an accommodation to work from home until she was able to drive. (Ahmann Dep. at 212:4–25; Sullivan Decl. ¶¶ 19, 25, Ex. W at 3, Ex. Q at 2.) Cadena testified that her return-to-work date reasonably fell within the anticipated recovery time of four to six

weeks and that nothing in his observations indicated an abnormal recovery, so he re-sent the updated return to work date, which Blattner received. (Cadena Dep. at 73:8–16; Ex. Q at 2.) In medical messaging, Ahmann referenced her perceived requirement that the letter be drafted to include no restrictions but also that she elected to take another week of rest. (Cadena Dep. at 71:9–73:16; Sullivan Decl. ¶ 15, Ex. N at 44.)

After returning to work, Ahmann asked Cadena to fill out FMLA paperwork as it had been "misplaced" or "lost in the shuffle" or "never completed," Blattner had asked for the paperwork, and she still had pulmonology appointments to attend. (Ex. N at 31; Lorentz Dep. at 59:23–60:24.) Cadena's office, however, indicated that because Ahmann had been cleared from neurology's perspective, it would not complete the FMLA paperwork, and she could reach out to pulmonology. (Ex. N at 31.) Ahmann did not at that time have any pulmonology appointments scheduled but stated that Anderson told her recovery could take twelve to eighteen months. (Sullivan Decl. ¶ 2, Ex. A at 22.) After Cadena refused to fill out FMLA paperwork, Ahmann reached out to Anderson, who completed the FMLA paperwork on January 24, 2024, estimating about six months' worth of intermittent leave, to expire on June 30, 2024. (Sullivan Decl. ¶ 28, Ex. Z at 4.) Anderson admitted that she did not speak to Cadena at the time she completed the FMLA paperwork, nor did she know of any specific upcoming appointments, but rather she estimated, based on her knowledge of Ahmann, how long recovery may take. (Anderson

Dep. at 92:8–94:21, 106:2–6.)  Lorentz also denied receiving this paperwork.  (Lorentz Dep. at 61:16–62:3.)

Ahmann alleged that she met with Lorentz upon returning from her hospital stay to inquire about intermittent FMLA leave for ongoing appointments.  (Ahmann Dep. at 37:3–21.)  According to Ahmann, during this meeting, Lorentz discouraged her from taking intermittent FMLA leave and instead just to work out a schedule with her manager. (*Id.*)  Lorentz admitted that standard policy first encourages employees to informally resolve scheduling conflicts before using intermittent FMLA leave.  (Lorentz Dep. at 50:18–22; *see also* FMLA Policy at 6.)  Finally, Lorentz described that he understood Ahmann's FMLA coverage to have ended upon her return to work, so he did not follow up on intermittent leave.  (Lorentz Dep. at 62:5–7, 69:6–19.)

Ahmann described a significant change in her work environment in April 2022 when she began being supervised by Sandy Borstad.  (Ahmann Dep. at 217:10–11, 219:18–220:5, 222:3–25.)  Ahmann reported feeling as if Borstad "put her in a box" and made her feel like she was not doing anything right.  (*Id.* at 301:16–19.)  Borstad and Ahmann presented conflicting opinions on how the spring progressed.  Borstad noted several concerns with Ahmann's work product and Ahmann's inability to take or implement feedback.  (Sullivan Decl. ¶ 32, Ex. DD at 5–8.)  Ahmann described the working environment as becoming solely focused on her health issues.  (Ahmann Dep. at 302:12–13.)  Borstad denied any knowledge of Ahmann's FMLA status during Ahmann's tenure

but knew of her time off for surgery.  (Thome Decl. ¶ 2, Ex. 24 ("Borstad Dep.") at 20:17–23.)

In late May 2022, Ahmann reached out to Lorentz to ask when she would need to update her FMLA paperwork and information regarding the tracking of FMLA hours. (Thome Decl. ¶ 2, Ex. 7 at 2–3.)  Lorentz responded that Ahmann had nothing listed about FMLA going forward and that they should speak prior to Ahmann completing any paperwork.  (*Id.* at 2.)

In June 2022, Ahmann's relationship and standing at Blattner continued to worsen. Borstad reported many conversations with Ahmann about her performance.   (Ex. DD at 5–8, Sullivan Decl. ¶¶ 33, 37, Exs. EE at 15, II at 2–4.)  Days before her termination, Ahmann contacted Sheri Lemke, a Blattner human resources employee, asking to whom she could report a problematic supervisor.  (Ahmann Dep. at 40:11–25; Thome Decl. ¶ 2, Ex. 8 at 2.)  Specifically, Ahmann noted that she did not need help at that time but wanted someone to know, and that she had talked to the leader with whom she had a problem but would do so again.  (Thome Decl. ¶ 2, Ex. 8 at 2.)

Blattner, through Borstad and her supervisor Dan Thomas, terminated Ahmann on June 23, 2022, allegedly for poor job performance. (Ex. C at 2; Borstad Dep. at 14:24–15:7.)  Blattner claimed that Ahmann had not made progress since being placed on a Performance Improvement Plan in July 2021, when she received the written warning. (*Id.*)  Ahmann testified that she was unaware of any Performance Improvement Plan and

that shortly before her termination, she received praise from leadership, including the

company owner, and a bonus which she understood to require good standing.  (Ahmann

Dep. at 61:1–3, 98:7–8, 223:16–18; Thome Decl. ¶ 2, Ex. 6 at 3, Ex. EE at 5.)

## II.    PROCEDURAL HISTORY

After her termination, Ahmann filed this Complaint against Blattner bringing two

counts under the FMLA: (1) Interference with Entitlement to the FMLA Rights and (2)

Retaliation/Discrimination in Violation of the FMLA.  (Compl. ¶¶ 44–54.)  Blattner moved

for summary judgment on both counts.  (Mot. Summ. J., Aug. 8, 2024, Docket No. 21.)

### DISCUSSION

## I.    STANDARD OF REVIEW

Summary judgment is appropriate when there are no genuine issues of material

fact, and the moving party can demonstrate that it is entitled to judgment as a matter of

law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case, and

a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a

verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A court considering a motion for summary judgment must view the facts in the light most

favorable to the nonmoving party and give that party the benefit of all reasonable

inferences to be drawn from those facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 587 (1986).  The nonmoving party may not rest on mere allegations or

denials but must show, through the presentation of admissible evidence, that specific

facts exist creating a genuine issue for trial.  *Anderson*, 477 U.S. at 256 (discussing Fed. R.

Civ. P. 56(e)).  "The mere existence of a scintilla of evidence in support of the plaintiff's

position will be insufficient; there must be evidence on which the jury could reasonably

find for the plaintiff."  *Id.* at 252.

## II.    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The FMLA entitles eligible employees to twelve weeks of unpaid leave during a

twelve-month period under certain circumstances.  29 U.S.C. § 2612(a)(1).  One of the

permissible circumstances is "a serious health condition that makes the employee unable

to perform the functions of the position of such employee."  *Id.* § 2612(a)(1)(D).

The FMLA permits employees to bring a private right of action if the employer interferes

with or retaliates against the employee because they exercised their rights under the

act. *Thompson v. Kanabec County*, 958 F.3d 698, 705 (8th Cir. 2020); *see also* 29 U.S.C. §

2615.  Ahmann brings both an interference and a retaliation claim.  Blattner seeks

summary judgment on both counts, claiming instead that Ahmann attempted to use

FMLA to shield herself from the consequences of poor work performance.

### A.    Interference with Entitlement to FMLA Rights

To succeed on an FMLA claim of interference, an employee must show that: (1)

they were eligible for FMLA leave; (2) the employer knew the employee needed FMLA

leave; and (3) the employer denied the employee an FMLA benefit to which they were

entitled. *Smith v. AS Am., Inc.*, 829 F.3d 616, 621 (8th Cir. 2016); *see also Ballato v.*

*Comcast Corp.*, No. 09-2236, 2011 WL 2728265, at *6 (D. Minn. July 13, 2011), *aff'd* 676

F.3d 768 (8th Cir. 2012) ("To succeed on a claim for interference, [plaintiff] must establish

that [they were] entitled to a benefit that was denied.").  Additionally, "a claim for interference will fail unless the employee also shows that the employer's interference prejudiced the employee as the result of a real, remediable impairment of [their] rights under the FMLA."  *Thompson*, 958 F.3d at 705–06 (quoting *Massey-Diez v. Univ. of Iowa Cmty. Med. Servs., Inc.*, 826 F.3d 1149, 1160 (8th Cir. 2016)).

### 1.    FMLA Eligibility

Ahmann must first show that she was eligible for FMLA leave.  But Blattner argues that other than when she was hospitalized, Ahmann was never eligible for FMLA leave[1] because she never returned any completed FMLA paperwork and intermittent leave was not medically necessary.  But factual disputes remain on both arguments against Ahmann's FMLA eligibility.

### a.    Completed Documentation

The FMLA allows employers to require a certification from a health care provider supporting the claimed need to take FMLA leave.  29 C.F.R. § 825.305(a).  Blattner's policy required a certification of this nature for every type of FMLA leave, including intermittent leave.  If an employee fails to return this paperwork, the employer can "deny the taking of FMLA leave."  29 C.F.R. § 825.305(d).  The employee bears the responsibility to either

---

[1] Neither party disputes that Ahmann would have been eligible for FMLA leave during her hospitalization, but she was able to use paid time off and short-term disability, so FMLA leave was not necessary.

furnish the completed paperwork to the employer or to furnish a release to the medical provider so that they can submit the certification directly to the employer. *Id.*

There remains a dispute over whether the completed documentation was returned to Blattner such that Blattner could not summarily deny FMLA leave. The record suggests that Ahmann provided FMLA paperwork to her provider on two occasions, and that on both of those occasions it was faxed directly to Blattner.[2] While Blattner notified Ahmann that her first paperwork submission was misplaced or not received, Ahmann received no notification after submitting her paperwork again. Blattner now claims it never received any completed FMLA paperwork. Blattner does, however, report receiving other communications from Ahmann's providers. A dispute remains as to whether Ahmann completed the proper FMLA documentation and thus activated her eligibility for intermittent FMLA leave.

### b.    Medical Necessity

An employee may take FMLA leave intermittently only when medically necessary. 29 C.F.R. § 825.203; 29 U.S.C. § 2612(b)(1). Blattner argues that the opinions of Ahmann's physicians do not support a finding that intermittent leave was medically necessary, and that Ahmann's proclamations alone are insufficient.

---

[2] Both of these documents were faxed to (320) 356-7392, which is listed on the public Blattner website as its fax number. Blattner Company, https://www.blattnercompany.com/contact (last visited Jan. 16, 2025).

The information from Ahmann's physicians create a dispute about the medical necessity of intermittent FMLA leave.  Ahmann's neurologist, Cadena, did refuse to complete the FMLA paperwork again after Ahmann returned to work because she had been cleared from a neurology perspective.  Cadena's opinion suggests that Ahmann did not require intermittent FMLA leave to attend **neurology** appointments, but the opinion also specifically recommends that if Ahmann has follow up appointments with pulmonology that require intermittent FMLA leave, she should contact those providers.  Ahmann's primary care physician, Anderson, however, completed the FMLA paperwork and specifically noted a need for intermittent FMLA leave to attend follow up appointments and continue recovering.  Whether it was medically necessary for Ahmann to be on intermittent FMLA leave remains disputed.

### 2.    Knowledge of FMLA Need

Ahmann must also show that Blattner had knowledge of her need to take FMLA leave.  Presumably, Blattner at least had such knowledge during and after Ahmann's hospitalization, but there remains a dispute as to precisely when Blattner first knew Ahmann needed FMLA leave.  Ahmann argues that Blattner first had knowledge in March 2021.

Informing an employer of a sickness without more detail is insufficient to impart sufficient knowledge onto the employer.  *Carter v. Ford Motor Co.*, 121 F.3d 1146, 1148 (8th Cir. 1997).  However, an employee need not reference the FMLA by name; rather, courts use a totality of the circumstances test.  *Murphy v. FedEx Nat'l, Inc.*, 618 F.3d 893,

903 (8th Cir. 2010).  Generally, adequate knowledge of a potential health condition requiring FMLA is a fact question to be resolved by the jury.  *Phillips v. Mathews*, 547 F.3d 905, 909 (8th Cir. 2008).

Beginning in March 2021, Blattner argues that Ahmann did nothing more than put Blattner on notice that she was sick and, without more, did not adequately inform Blattner that she may be eligible for FMLA.  But Ahmann alleges more than that.  Ahmann argues that Blattner, through Sean Martin, became aware of her potentially FMLA-qualifying medical needs in March 2021 because she communicated frequently with him about her health issues and need to be away from work before her ultimate hospitalization.  Ahmann also described frequent appointments that could "run long," repeated migraines, "auto immune thing," medication reactions, and a scheduled MRI. (Ex. 15 at 2, 4, 7–8, 10, 12–15.)

Because Ahmann did not just tell Blattner that she was sick without more detail, the totality of the circumstances presents a factual dispute as to whether Blattner had sufficient knowledge of Ahmann's need to take FMLA leave beginning in March 2021.

### 3.    Denial or Interference

Finally, Ahmann must show that, despite her eligibility and Blattner's knowledge of that eligibility, Blattner denied her FMLA leave or interfered with her right to take FMLA leave.  Here, too, there remain disputes of fact.

An employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise," any FMLA rights.  29 U.S.C. § 2615(a)(1).  This prohibition against

-14-

interference relates not only to outright denial but also discouraging an employee from using FMLA benefits or manipulating the circumstances to avoid responsibility under FMLA. *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006). However, the employee must still show that they were "denied the employee entitlements under the FMLA." *Quinn v. St. Louis County*, 653 F.3d 745, 754 (8th Cir. 2011). For interference to be actionable, it must also result in prejudice to the employee. *Massey-Diez*, 826 F.3d at 1158 (citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89–90 (2002)); *see also Throneberry v. McGehee Desha Cty. Hosp.*, 403 F.3d 972, 977 (8th Cir. 2005) (describing that some interferences are lawful).

Ahmann alleges interference when Blattner failed to notify her of FMLA rights in March 2021, when Blattner failed to record FMLA absences, and when Blattner discouraged its salaried employees from utilizing intermittent FMLA leave. Blattner does not dispute that it never recorded any FMLA absences because it never believed Ahmann to be on intermittent FMLA leave.

### a.    Notice

Employers are required to give an employee notice of FMLA eligibility within five days of gaining knowledge that an employee's leave may be for an FMLA-qualifying reason. 29 C.F.R. § 825.300(b)(1). Blattner principally argues that it never provided official notice to Ahmann of FMLA eligibility because it had no knowledge of her need to

take intermittent FMLA leave.[3]  If Blattner can prove at trial that it had no knowledge of Ahmann's FMLA needs, they are correct.  But Blattner's knowledge remains a disputed fact, and if Blattner received adequate notice of a potentially qualifying condition, then it would have been required to notify Ahmann again of her rights under the FMLA.

The Court cannot grant summary judgment to Blattner on this point because the factfinder must determine whether Blattner knew Ahmann needed FMLA leave.

### b.    Discouragement

Interference with FMLA rights also includes discouraging an employee from using FMLA leave.  29 C.F.R. § 825.220(b); *Stallings*, 447 F.3d at 1050.  Here, Ahmann repeatedly requested information about FMLA leave and whether she needed that coverage for medical appointments.  In response, Blattner continuously told Ahmann that she did not need to use FMLA for her absences and that instead she should just work out a schedule with her supervisor.  While the record suggests that Blattner did not prevent Ahmann from attending appointments, there is a genuine dispute as to whether Blattner's response would be considered discouragement from using FMLA leave and thus interference with her FMLA rights.

---

[3] Blattner alternatively cites its orientation materials and March 2020 notice as prior notice of FMLA rights.  But notice must be given again within five days of learning of an employee's potentially need for FMLA leave, so these orientation materials do not negate a potential responsibility in March or April 2021.  29 C.F.R. § 825.300(b)(1).

### 4.   Prejudice

Assuming Blattner interfered with Ahmann's rights under the FMLA, Ahmann still must show that she was prejudiced by that inference.  *Massey-Diez*, 826 F.3d at 1158; Throneberry, 403 F.3d at 977 (8th Cir. 2005).  Blattner argues that Ahmann's ability to attend any appointments necessarily precludes a finding that she was prejudiced by any perceived interferences.  Ahmann argues, however, that without the FMLA interferences, Blattner would have taken her FMLA absences into consideration in evaluating her performance.  Because Ahmann was terminated while potentially covered by intermittent FMLA leave, a reasonable jury could determine that she was prejudiced by the interferences.  Accordingly, Blattner's motion for summary judgment will be denied.

### B.   Retaliation/Discrimination in Violation of the FMLA

Ahmann alleges that ultimately, she was terminated because of her need to use FMLA leave.  The FMLA makes it unlawful for "any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA. 29 U.S.C. § 2615(a)(2); see *also Brown v. Diversified Distrib. Sys., LLC*, 801 F.3d 901, 907 (8th Cir. 2015).  FMLA retaliation claims can be proven through direct evidence of retaliation, or under the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03 (1973). *Phillips*, 547 F.3d at 912 (8th Cir. 2008) (applying the *McDonnell Douglas* framework to an FMLA retaliation claim). Ahmann presented no evidence of direct discrimination or retaliation.

Under the *McDonnell Douglas* framework for indirect discrimination or retaliation, an employee must first establish a prima facie case, which requires a showing that the employee (1) engaged in protected activity under the FMLA, (2) suffered a materially adverse employment action, and (3) established a causal connection between the protected activity and the adverse employment action. *Thompson*, 958 F.3d at 707 (citation omitted). The causal link can be made with a showing that the protected activity played a part in the defendant's actions. *Marez v. Saint-Gobain Containers, Inc.*, 688 F.3d 958, 963 n.3 (8th Cir. 2012). Then, the burden shifts to the defendants, who must come forward with evidence of a legitimate, nondiscriminatory reason for the adverse action. *Brown*, 801 F.3d at 909. Finally, the plaintiff bears the burden to show that the "proffered explanation is merely a pretext for unlawful retaliation." *Brown*, 801 F.3d at 909 (quotation omitted).

Blattner concedes that Ahmann suffered an adverse employment action when she was terminated and that she engaged in a protected activity when she tried to use FMLA. However, Blattner argues that (1) Ahmann failed to show a causal connection between the adverse action and the protected activity, and (2) even if Ahmann could make a prima facie showing of retaliation, Blattner's proffered reason for termination, poor work performance, was not pretextual.

### 1. Causal Connection

Ahmann connects her protected activity to her termination through escalating retaliatory conduct and temporal proximity. Courts have found that a temporal

relationship of a few weeks is sufficient to make a prima facie showing of discrimination. *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 833 (8th Cir. 2002). Still, temporal proximity alone is often insufficient to establish a causal connection absent other evidence showing additional conduct or a pattern of retaliation. *Id.* at 832; *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 866 (8th Cir. 2006).

Nothing in the record indicates that Ahmann had any problems at work prior to the spring of 2021, when both her health and work status began to disintegrate. In March 2021, Ahmann first notified her supervisor of health issues and a need to be away from work. Shortly thereafter, she received her first oral warning in April 2021. A written warning followed in July 2021. After receiving the written warning, Ahmann inquired about FMLA leave. As the fall progressed and Ahmann's health worsened, Ahmann missed additional work and Blattner repeatedly questioned her health. Additionally, Blattner reassigned various projects.

A similar dispute arose upon Ahmann's return after her December 2021 surgery. Ahmann's new supervisor, Borstad, claims that Ahmann received many informal coaching sessions and failed to improve her work product. Meanwhile, Ahmann claims that Borstad repeatedly asked her about her health and recovery, often in a hostile manner, and that only after Ahmann inquired about FMLA leave again did Borstad memorialize Ahmann's underperformance in writing. Despite Blattner's proclamations of

-19-

underperformance, Ahmann continued to receive bonuses and positive feedback from the company owner shortly before her termination.

The record suggests a strong temporal link between FMLA activity and performance issues, so the Court will find that Ahmann has made a sufficient prima facie showing of discrimination or retaliation.

### 2. Pretext

Because Blattner offers poor performance, a valid nondiscriminatory reason, as the reason for termination, Ahmann must show that Blattner's explanation is a mere pretext for discrimination.  A plaintiff can show pretext in many ways including that,

> the employee's proffered reason has no basis in fact, that the employee received a favorable review shortly before [s]he was terminated, that similarly situated employees who did not engage in the protected activity were treated more leniently, that the employer changed its explanation for why it fired the employee, or that the employer deviated from its policies.

*Phillips*, 547 F.3d at 913.

Ahmann presented sufficient evidence that material disputes remain over whether the reason for her termination was pretextual.  Before Ahmann had any health concerns, she received only positive feedback.  Blattner then issued an oral performance warning weeks after Ahmann disclosed her health problems and need for leave.  That oral warning was followed up by a written warning.  However, after those warnings, Ahmann was reassured by her supervisor that she was in good standing.  She was repeatedly told not

to worry about her job and to just take care of herself, including when she was in the hospital.

After Ahmann returned from surgery, she alleges being met with hostility towards her recovery. Her new supervisor described a failure to implement and respond to feedback. However, Ahmann received an additional bonus. Further, Ahmann was terminated by Borstad who had only been supervising Ahmann for a few months. As a result, whether Blattner's reason for terminating Ahmann was pretextual remains disputed, and Blattner's motion for summary judgment will be denied.

## CONCLUSION

Ahmann's health and employment relationship with Blattner progressed along parallel declines, ending in her termination and the instant action. Blattner claims that it could not have interfered with Ahmann's FMLA rights or retaliated because it did not have sufficient knowledge of Ahmann's need for intermittent FMLA leave, and even if it did, it ultimately only initiated adverse employment actions because of Ahmann's underperformance at work. However, Ahmann alleges that Blattner repeatedly discouraged her from using FMLA, took remedial action whenever Ahmann requested or needed FMLA, failed to notify Ahmann of her FMLA rights, and ultimately terminated her without consideration that her absences were protected FMLA leave. Because genuine disputes remain as to material facts surrounding Ahmann's FMLA eligibility, Blattner's knowledge of Ahmann's need to take intermittent FMLA leave, Blattner's alleged

interference with taking FMLA leave, and the reason for Ahmann's termination, the Court will deny Blattner's motion for summary judgment.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 21] is **DENIED**.

DATED:  March 11, 2025
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge